UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WQAS KHAN,<br><br>　　　　　Defendant. | No. 2:10-CR-0175 KJM<br><br><br>ORDER |

   The indictment in this case, filed nearly four years ago, charges defendant with two counts of possession with intent to distribute, 50 grams of methamphetamine and 500 grams of cocaine respectively, as well as with possession of a firearm in furtherance of a drug trafficking crime. In light of the charges, defendant has been detained without bail since April 28, 2010. The government has tried the case twice in the last nine months, advancing each time essentially the same evidence, with minor differences. The court has twice declared a mistrial because neither jury was able to reach a verdict. ECF Nos. 240, 283. In the first trial, it appears a single juror held out. In the second, it appears there were at least two blocs of jurors that formed, preventing a unanimous verdict. The government requests a third trial. At that trial, it says it will present in person the co-defendant whose identity and relationship to defendant has been disclosed in the prior trials without her appearance.

The federal charges are not the only charges pending against defendant. Just days before the first trial here in July 2013, he was charged with murder in state court. Indeed, the federal indictment was the result of evidence found by state authorities during the execution of a search warrant in December 2009, seeking evidence of the murder. *See* ECF No. 202 at 1-5. In its 2010 order detaining defendant pending trial, the court noted his status at the time as a "person of interest" in a state homicide investigation. ECF No. 6 at 2.

Following the second mistrial in January of this year, while tentatively setting a date for a third trial, this court asked the parties for their positions regarding whether the court could dismiss this indictment, without prejudice. The parties have briefed the question.

Defendant argues a third trial would be "a trial of attrition in violation of the Fifth and Sixth Amendments." ECF No. 289 at 2. He says this court may rely on its supervisory powers to dismiss in order to avoid the staleness and prejudice inherent in a third trial. *Id*. at 3. He argues that jurors' comments following the second trial show the government's case was even less persuasive than it had been during the first trial. This suggests, he argues, the government's indecisive prosecution of the case will likely result in a third mistrial. Defendant also says he will stipulate to a dismissal without prejudice. *Id.* at 7.

The government argues this court's supervisory powers are necessarily constrained by the separation of powers. As a result, it says, the court cannot dismiss the indictment in the absence of any violation of the defendant's constitutional and statutory rights. ECF No. 290 at 2. Although at the most recent status conference the government intimated dismissal without prejudice might preclude its refiling on statute of limitations grounds, it does not make this argument in its briefing and the court considers it waived.

II. RELEVANT AUTHORITY

Under Rule 31 of the Federal Rules of Criminal Procedure, "[i]f the jury cannot agree on a verdict on one or more counts, the court may declare a mistrial on those counts. The government may retry any defendant on any count on which the jury could not agree." Nothing suggests that multiple mistrials take a case out of the Rule's operation.

/////

At the same time, a district court has inherent supervisory authority over its processes, which it must exercise "with a view toward balancing the interests involved." *United States v. Hasting*, 461 U.S. 499, 506-07 (1983) (finding that Court of Appeals improperly overturned a conviction for prosecutorial misconduct without considering the victims' trauma in a new trial, "the practical problems of retrying these sensitive issues more than four years after the events," or the harmlessness of the prosecutor's conduct). The court's inherent authority extends to control of its docket and its "'substantial discretion over what happens *inside* the courtroom." *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (en banc) (quoting *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991)) (emphasis in original).

The bulk of authority on the question of dismissal of a criminal case addresses dismissal with prejudice, which is not what the court here considers. The court has reviewed this authority nonetheless, to the extent it may provide guidance. A court may exercise its supervisory powers to dismiss an indictment with prejudice "'(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct.'" *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010) (quoting *United States v. Matta-Ballesteros*, 71 F. 3d 754, 763 (9th Cir. 1995)[1]). A court's powers are not limited to these three areas. Under its inherent authority a court may act "to effectuate, as far as possible, the speedy and orderly administration of justice" and "to ensure fundamental fairness." *United States v. Richter*, 488 F.2d 170, 173-74 (9th Cir. 1973); *see W.R. Grace*, 526 F.3d at 511 n.9 (a court's inherent authority is not limited to the three areas and so "[w]e therefore return to the understanding of inherent power that we recognized in *United States v. Richter* . . . .). Some district courts have exercised their supervisory powers to dismiss on "fundamental fairness" grounds when the government has not been able to secure a conviction following multiple trials. *See United States v. Rossoff*, 806 F. Supp. 200, 202 (C.D. Ill. 1992) (dismissing an indictment with prejudice, instead of without prejudice as requested by government, because multiple retrials

---

[1] *Matta-Ballesteros* was amended on denial of rehearing, without altering the reasons for which it is cited in *Struckman*. 98 F.3d 1100 (9th Cir. 1996).

offended the concept of fundamental fairness); *United States v. Ingram*, 412 F. Supp. 384, 385-86 (D.D.C. 1976) (dismissing an indictment with prejudice after two trials resulted in hung juries because it was "simply a matter of fair play"). Nevertheless, in reviewing a dismissal with prejudice, the Ninth Circuit has said "[a] court may dismiss an indictment under its supervisory powers only when the defendant suffers substantial prejudice and where no lesser remedial action is available." *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) (citations and internal quotation marks omitted).[2]

The government relies on *United States v. Miller,* 4 F.3d 792 (9th Cir. 1993), in arguing this court's inherent authority does not allow it to dismiss the indictment simply because of the two mistrials. ECF No. 290 at 2. In *Miller*, after the jury acquitted on some counts and hung on others, the district court dismissed all counts except those on which a majority of the jurors had voted to convict. The record of the case implies the dismissal was with prejudice. The court did not specify its reasons for dismissal, saying only that "a retrial would be unfair as to those counts in which the government did not convince at least seven jurors to vote for a conviction." 4 F.3d at 793. The Ninth Circuit reversed, observing the district court had not made any findings that a retrial would involve the presentation of perjurious testimony or irrelevant evidence, as the defendants had argued. *Id.* at 795-96. The Court of Appeals concluded that the dismissal, based only on the fact that the jury was hung on some counts in defendants' favor, was "not an adequate basis for dismissal under the court's supervisory power." *Id.* at 795. The court did not hold that a dismissal following a retrial, including without prejudice, would never be appropriate.

III. ANALYSIS

Here, the court finds a dismissal without prejudice would be justified, to allow a cooling-off period and promote the fundamental fairness that is the hallmark of the federal

---

[2] Some state courts have identified factors to be analyzed in considering whether a defendant's federal due process rights are violated by retrial following a mistrial. *See, e.g., Ex parte Anderson*, 457 So. 2d 435, 444-45 (Ct. Crim. App. Ala. 1984); *Ohio v. Roper*, 2002 WL 31890116, at *14 (Ct. App. Ohio 2002). In this case, the court is not relying on the due process clause in reaching its decision.

4

1    judicial system. A third trial in short succession raises the specter that witness testimony will be
2    tailored further in an effort to address perceived lacunae from the first two trials. It also is likely
3    to compound confusion as witness and exhibit lists are modified yet again. Some confusion was
4    evident already during the second trial, when counsel occasionally referenced exhibits from the
5    first trial that the government had withdrawn, and even on occasion asked a witness about
6    exhibits using a list developed in the state murder investigation. Evidence regarding men's and
7    women's shoes, and a large brick of cocaine, was presented differently the second time around,
8    requiring some fancy footwork by counsel to keep straight the stories being told to the jury, and
9    some mental gymnastics by the court to cabin its rulings to the trial at hand.[3]  *Cf. Ingram*, 412 F.
10   Supp. at 386 ("Retrials are almost always unsatisfactory," for a number of reasons, all of which
11   "impede[] the search for truth.").

12           Also, the government made a strategic determination at the second trial not to call
13   the co-defendant even though she was no longer detained on the pending state murder charges; it
14   withdrew the stipulation regarding the co-defendant it had agreed to during the first trial, when
15   she was detained by the state. If given a third bite at the apple, the government says it will call
16   the co-defendant, who is now a cooperating witness in the state case. In each prior trial, the court
17   has precluded any reference to the state charges as unduly prejudicial, and in order to maintain
18   proper focus on the serious, separate charges defendant faces here; the court anticipates
19   confirming this order in any future trial. While the court will remain vigilant in monitoring the
20   co-defendant's testimony, the risk is great at this time that either the federal case will be tainted
21   by some allusion in a third trial to the state charges or mistried once again by the required
22   omission of contextual evidence.

23           For these reasons, dismissal without prejudice to allow for the equivalent of a
24   "hard reset" and for resolution of the state charges, if such resolution is forthcoming, would be
25   /////

26

27   [3] The examples provided here are gleaned from the court's review of a rough transcript of the
     second trial. The court has requested that the court reporter prepare an official transcript of
28   selected passages; once those are available they will be added to the court's docket.

1 appropriate to preserve judicial integrity and ensure any conviction rests only on appropriate
2 considerations.  *Struckman*, 611 F.3d at 574.

3        In reaching this conclusion, however, the court of course is mindful that charging
4 decisions "are generally within the prosecutor's exclusive domain . . . [and that t]he separation of
5 powers mandates judicial respect for the prosecutor's independence." *United States v. Carrasco*,
6 786 F.2d 1452, 1455 (9th Cir. 1986), *overruled on other grounds, United States v. Jacobo*
7 *Castillo*, 496 F.3d 947 (9th Cir. 2007).  Moreover, a dismissal without prejudice could have the
8 undesirable future effect of foisting on a colleague of this overburdened district a case with which
9 this court has gained some familiarity, through the multiple trials as well as heavily litigated
10 motion practice.  On balance, therefore, the court concludes dismissal without prejudice
11 ultimately is not an appropriate exercise of its supervisory authority.

12        There is a less muscular option, however, that better addresses all the
13 circumstances presented by this case and reviewed above.  A limited stay will allow for any third
14 trial to begin with a fresh start and a significant reduction in the risks reviewed above.  In this
15 way, the public's abiding interest in fully fair proceedings will be properly vindicated.  A stay
16 also will provide an opportunity for clarification of the status of the undeniably serious state
17 murder charges against defendant and his co-defendant, if the state in its discretion determines to
18 pursue those charges in the meantime.  Although the stay will delay the final resolution of this
19 case, the court gathers from defendant's willingness to stipulate to a dismissal without prejudice,
20 that he is prepared to accept some further delay and the associated uncertainty.  For all the
21 reasons supporting the stay set forth above, the court finds that the continuance resulting from the
22 stay will preclude a miscarriage of justice and in fact serve the ends of justice, and that those ends
23 outweigh the best interest of the public and defendant in a speedier third trial.  18 U.S.C. § 3161
24 (h)(7)(A), (B)(1); Local Code T1.
25 /////
26 /////
27 /////
28 /////

1    IT IS THEREFORE ORDERED this case is STAYED until April 1, 2015, at 9
2  a.m., at which point the court will hold a status conference.  Time is excluded under the Speedy
3  Trial Act until the status conference.
4  DATED:  April 1, 2014.

_____
UNITED STATES DISTRICT JUDGE